**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**WADE CHAMPENDO, on behalf**
**of all others similarly-situated,**

      **Plaintiff,**

**v.**                                **CASE NO:**

**WAL-MART STORES, INC.,**
**ADMINISTRATIVE COMMITTEE OF THE**
**WALMART STORES, INC. ASSOCIATES'**
**HEALTH AND WELFARE PLAN,**

      **Defendants.**
_____/

**<u>CLASS ACTION COMPLAINT</u>**

1.     The Named Plaintiff is a former employee of Defendant Wal-Mart Stores, Inc. ("the Corporate Defendant"), which provides its employees benefits through the Walmart Stores, Inc. Associates' Health and Welfare Plan (the "Plan").

2.     The Plan is a self-funded employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 and administered by Defendant Administrative Committee of the Wal-Mart Stores, Inc. Associates Health and Welfare Plan ("the Plan Defendant").

3.     The Corporate Defendant and the Plan Defendant are hereinafter collectively referred to as "Defendants."

4.     Plaintiff sues Defendants for violating ERISA, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").

5.      Defendants violated ERISA, as amended by COBRA, by failing to provide the Named Plaintiff with a COBRA notice that complies with the law.  Specifically, Defendants' COBRA notice failed to identify the Plan Administrator, nor did it bother providing any of its required contact information.

6.      As the Court in *Bryant v. Wal-Mart Store, Inc.,* No. 16-24818-CIV, 2019 WL 3542827, at *5 (S.D. Fla. Apr. 18, 2019) explained when analyzing a nearly identical Walmart COBRA notice, "section 2590.606-4(b)(4)(i) requires the identification of the plan administrator."

7.      And, "without the plan administrator's name, address, and telephone number, this Court [should] find[] that Defendant's notice is not sufficient to permit the discharged employee to make an informed decision whether to elect coverage." *Bryant v. Wal-Mart Store, Inc.,* No. 16-24818-CIV, 2019 WL 3542827, at *5 (S.D. Fla. Apr. 18, 2019.

8.      Thus, Defendants repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon the occurrence of a "qualifying event" as defined by the statute.

9.      As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

11. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2).

## THE NAMED PLAINTIFF

12. Plaintiff is a Florida resident and former employees of the Corporate Defendant.

13. Named Plaintiff worked for Walmart from January through August of 2018. He last worked at the Walmart Distribution Center 7023, located at 6785 SW Enterprize Boulevard in Arcadia, Florida.

## THE WALMART DEFENDANTS

14. The Corporate Defendant Walmart is a foreign corporation with its headquarters in Arkansas, and employed more than 20 employees who were members of the Plan in 2018.

15. The Corporate Defendant is the Plan sponsor within the meaning of 29 U.S.C. §1002(16)(B). The Plan provides medical benefits to employees and their beneficiaries, and is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

16. The Plan Defendant, "Wal-Mart Stores, Inc. Associates' Health and Welfare Plan Defendant," is the Plan Administrator with the meaning of ERISA 3(16)(A)(i), 29 U.S.C. 1002(16)(A)(i).

## FACTUAL ALLEGATIONS

### COBRA Notice Requirements

17.     The COBRA amendments to ERISA include certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

18.     Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161.

19.     COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor. 29 U.S.C. § 1166(a).

20.     The relevant regulations prescribed by the Secretary of Labor concerning notice of continuation of coverage rights are set forth in 29 C.F.R. § 2590.606-4 and the Appendix thereto.

21.     Section 2590.606-4(b)(1), states:

> Except as provided in paragraph (b)(2) or (3) of this section, upon receipt of a notice of qualifying event …, the administrator shall furnish to each qualified beneficiary, not later than 14 days after receipt of the notice of qualifying

event, a notice meeting the requirements of paragraph (b)(4) of this section.

22.     Section 2590.606-4(b)(4), in turn, provides as follows:

(4) The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:

(i) The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits;

(ii) Identification of the qualifying event;

(iii) Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;

(iv) A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(v) An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi) An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7

of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a waiver of the right to continuation coverage before the date by which the election must be made;

(vii)  A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(viii) An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix) A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.) (SSA), that the qualified beneficiary is disabled, and the length of any such extension;

(x)  In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi) A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(xii)   A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

23.     To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. A copy of this Model Notice is attached hereto as Exhibit A. The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

24.     In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

***Another Court Has Already Held that the Walmart Notice Is Inadequate and Fails to Comply with COBRA***

25.     Defendants only partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that served Defendants' best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4. A sample copy of Defendants' 2018 COBRA notice is attached hereto as Exhibit B.

26.     Specifically, it violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits.

27.     Nowhere in the notice provided to Plaintiff is the Plan Administrator identified.

28.     Furthermore, the notice violates 29 C.F.R. § 2590.606-4(b)(4) because it fails to provide a notice of continuation coverage written in a manner calculated to be understood by the average plan participant.

29.     Without identifying the Plan Administrator a COBRA notice of continuation coverage, like the Walmart notice here, cannot be considered written in a manner calculated to be understood by the average plan participant.

30.     But these are not just unsupported allegations by Plaintiff because at least one federal district court has specifically held as follows: "Defendant's notice omits any reference to the plan administrator's name, address, and telephone number, as required by 29 C.F.R. § 2590.606-4(b)(4)(i). Without the plan administrator's name, address, and telephone number, this Court finds that Defendant's notice is not sufficient to permit the

discharged employee to make an informed decision whether to elect coverage." *Bryant v. Wal-Mart Store, Inc.*, No. 16-24818-CIV, 2019 WL 3542827, at *6 (S.D. Fla. Apr. 18, 2019).

31.     Defendants provided the same notice, with same deficiencies, to the Named Plaintiff and the 2018 putative class members he seeks to represent.

**Violation of 29 C.F.R. § 2590.606-4(b)(4)(i) – Failure to Identify Plan Administrator**

32.     Plaintiff was mailed a copy of Defendants' COBRA notice on or near the date of his respective qualifying event by CONEXIS, Walmart's COBRA administrator.

33.     Plaintiff was unable -- based on the Notice -- to ascertain the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits.

34.      The Walmart COBRA election notice, which is a plan document, does not identify the party responsible for administering continuation coverage in a manner calculated to be understood by the average plan participant.

35.     Defendants were required to provide "in a manner calculated to be understood by the average plan participant ... the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits." 29 C.F.R. § 2590.606- 4(b)(4)(i).

36.     The Walmart Notice fails to comply with this straightforward requirement.

37.     In fact, the word "Plan Administrator" only appears in tiny, nine-point font on the very last page of the Notice and makes no reference as to whether the Plan

Administrator is the Corporate Defendant, or the Plan Defendant, or anyone else for that matter.  Simply put who the Plan Administrator is not identified *at all* in the notice.  Nor is any of its contact information.

38.     The Notice informs Plaintiff and the putative class members to look to their "Associate Benefits Book" for more information of the plan.  (Exhibit B, ¶ 2)("This notice does not fully describe continuation coverage or other rights under the Plan. More information about continuation coverage and your rights under the Plan is available in your Associate Benefits Book.")

39.     Further, the return address in the upper left-hand corner on the first page of the Notice merely signifies that the Notice is being sent from CONEXIS.  It does nothing to clarify whether "CONEXIS," or "Walmart," or some other entity, much less the Plan Defendant, is responsible for administering continuation of coverage benefits.

40.     To further compound the confusion over which entity is responsible for administering the plan, the Notice informs employees to contact *either* CONEXIS or the Walmart Benefits Customer Service at 1-800-421-1362.  (*See* Exhibit B, p. 2).  This, too, is confusing.

### The Notice violates 29 C.F.R. § 2590.606-4(b)(4)

41.     Besides failing to identify the party responsible under the plan for the administration of continuation coverage benefits, Walmart's Notice violates 29 C.F.R. § 2590.606-4(b)(4) because Defendants failed to provide a notice of continuation coverage written in a manner calculated to be understood by the average plan participant.

42. The notice provided to Plaintiff is confusing, ambiguous and critical components, if included, are piecemealed throughout the notice rather than being made clear and understandable to the average plan participant.

43. An admitted "plan sponsor" such as the Corporate Defendant here, must be considered the "administrator" in cases where the plan documents fail to designate a party as the administrator. ERISA § 3(16)(a)(ii), 29 U.S.C. § 1002(16)(a)(ii). That is precisely the situation we are dealing here. Because the Corporate Defendant is the plan sponsor, and because the plan documents, meaning the COBRA notice, fail to designate a party as the administrator, ERISA § 3(16)(a)(ii), 29 U.S.C. § 1002(16)(a)(ii), the Corporate Defendant must be considered the Plan Administrator.

44. ERISA-governed plans often have two types of "administrators." *See* Corporate Counsel's Guide to ERISA § 4:6 (2014). The first type—a claims administrator—is the entity that "administers claims for employee welfare benefit plans and has authority to grant or deny claims." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006); *see also* Corporate Counsel's Guide to ERISA § 4:6 ("[A] claims administrator is the party responsible for claims review and approval under the given benefit plan.").

45. The second type—a plan administrator—is usually the "employer who adopted the benefit plan in question." Corporate Counsel's Guide to ERISA § 4:6. "The phrase 'plan administrator' should not be confused with the term 'claims administrator.' . . . [T]h[e] role [of claims administrator] usually does not confer on that party the status of plan administrator." *Id.* Quite often, indeed, the claims administrator and the plan

administrator are not the same. *See, e.g., Moore*, 458 F.3d at 424–25, 438 (distinguishing between the employer/plan administrator and the insurance company/claims administrator); *see also Fendler v. CNA Grp. Life Assurance Co*., 247 F. App'x 754, 755, 758–59 (6th Cir. 2007).

46.     Simply put, Walmart's Notice was not "written in a manner calculated to be understood by the average plan participant," as to who or which entity is the "Plan Administrator," and certainly did not allow the average plan/participant (or anyone for that matter) to distinguish between the employer/plan administrator and the insurance company/claims administrator.  Rather, as required by ERISA § 3(16)(a)(ii), 29 U.S.C. § 1002(16)(a)(ii), because the Corporate Defendant is the plan sponsor, and because the plan document -- meaning the notice -- fails to designate a party as the administrator, the Corporate Defendant must be considered the Plan Administrator.

### Plaintiff's First Concrete Injury: Informational Injury

47.     First, in accordance with the Eleventh Circuit's recent decision in *Church v. Accretive Health, Inc*., 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016), Plaintiff suffered a concrete informational injury because Defendant failed to provide Plaintiff and the putative class members with information to which they were entitled to by statute, namely an ERISA-compliant COBRA notice.  Through the FCRA, Congress has created a new right—the right to receive the required Notice as set out in ERISA—and a new injury—not receiving a proper Notice.  The Plaintiff's "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549.

48.     Pursuant to ERISA, the Named Plaintiff and putative class members were entitled to receive certain information at a specific time after a qualifying event, namely a COBRA notice that complied with ERISA's fourteen requirements.  By depriving the Named Plaintiff of this information, Defendants injured Plaintiff and the putative class members he seeks to represent.

### *Plaintiff's Second Concrete Injury: Loss of Insurance Coverage*

49.     The Named Plaintiff suffered a tangible injury in the form of loss of insurance coverage due to Defendants' deficient Notice.  This easily gives Plaintiff Article III standing.  Besides a paycheck, this is one of the most valuable things employees get in exchange for working for an employer like Walmart.  Insurance coverage has a monetary value, the loss of which is a tangible and economic injury clearly giving rise to Article III standing.

### *Named Plaintiff's Third Concrete Injury: Medical Bills*

50.     Additionally, Named Plaintiff suffered further economic harm as a result of the deficient Walmart COBRA notice in the form of medical expenses and bills that he paid out-of-pocket after he lost his Walmart health insurance because of the deficient Walmart COBRA notice.

### *Named Plaintiff's Fourth Concrete Injury: Wasted Time*

51.     Plaintiff suffered an additional concrete harm in the form of significant wasted time (hours) trying to figure out how to self-treat at least one medical condition since he no longer had health insurance.  Additional time was spent trying to figure out which providers would treat he and his family now that they lacked health insurance.

*Named Plaintiff's Fourth Concrete Injury: Anxiety and Stress*

52.     Plaintiff suffered further concrete harm in the form of stress and anxiety created by the loss of his health insurance coverage

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following persons:

> **All participants are beneficiaries in the Defendant's Health Plan who: (1) were sent a COBRA notice by Defendant, in the form attached as Exhibit B, during the year 2018 only, as determined by Defendant's records, and (2) did not elect continuation coverage.**

54.     Because no administrative remedies are required, Plaintiff has sought none and seeks to move forward with the putative class action.  Even if any such remedies did exist, attempting to exhaust them would have been futile.

55.     Numerosity: The Class is so numerous that joinder of all Class members is impracticable. On information and belief, thousands of individuals satisfy the definition of the Class.

56.     Typicality: Plaintiff's claims are typical of the Class. The COBRA notice that Defendant sent to Plaintiff was a form notice that was uniformly provided to all Class members in the year 2018. As such, the COBRA notice that Plaintiff received was typical of the COBRA notices that other Class Members received, and suffered from the same deficiencies.

57.     Adequacy: Plaintiff will fairly and adequately protect the interests of the Class members, he has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

58.     Commonality: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a. Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

b. Whether Defendants' COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

c. Whether statutory penalties should be imposed under 29  U.S.C. § 1132(c)(1) for Walmart's failing to comply with COBRA notice requirements, and if so, in what amount;

d. The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and

e. Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

59.     Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices and the adequacy of its COBRA

15

notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

60.     Plaintiff intends to send notice to all Class Members to the extent required by Rule 23(c)(2) of the Federal Rules of Civil Procedure.

61.     The names and addresses of the Class Members are available from Walmart's records and, in fact, have already been identified by the COBRA Administrator, Conexis.

**CLASS COUNT I**
**(Against Defendant Walmart Stores, Inc.)**
*Violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4*

62.     Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

63.     The Plan is a group health plan within the meaning of ERISA.

64.     The Corporate Defendant is the sponsor of the Plan, and was subject to the continuation of coverage and notice requirements of COBRA.

65.     Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Corporate Defendant was aware that they had experienced such a qualifying event.

66.     On account of such qualifying event, the Corporate Defendant caused to be sent to Plaintiff and the Class Members a COBRA notice in the form attached hereto as Exhibit B.

67. The COBRA notice that the Corporate Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above.

68. These violations were material and willful.

69. The Corporate Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

**CLASS COUNT II**
**(Against Defendant Administrative Committee**
**of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan)**
***Violation of 29 U.S.C. § 1132(c)(1) and ERISA § 502(c)***

70. Here, because Defendant the Corporate Defendant contends it somehow has no liability to Plaintiff, in the alternative Plaintiff also brings a claim against the Plan Defendant.

71. Plaintiff repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

72. The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

73. Section 606(a)(4) of ERISA requires the "administrator" of a group health plan to notify a qualified beneficiary who would lose plan coverage of their right to elect COBRA continuation coverage. "Administrator" is defined in ERISA § 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i), as "the person specifically so designated by the terms of the

instrument under which the plan is operated." There is no Plan Administrator named in the COBRA notice.

74.     However, according to the Corporate Defendant, "[h]ere the Plan's governing documents specifically designated a party other than Wal-Mart as the administrator of the Plan. Ex. 2 at 238. The party so designated was 'The Administrative Committee, Associates' Health and Welfare Plan.' "

75.     Thus, Plaintiff brings this claim against the Plan Defendant, who, according to the Corporate Defendant, is the proper party to this lawsuit.

76.     The potential penalty that Plaintiff seeks under ERISA § 502(c)(1) for the alleged notice deficiency likewise is imposed upon the "administrator" of a plan.

77.     Under 29 U.S.C. § 1132(c), "Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title, section 1021(f) of this title, or section 1025(a) of this title with respect to a participant or beneficiary

78.     Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and the Plan Defendant was aware that they had experienced such a qualifying event.

79.     On account of such qualifying event, the Plan Defendant caused to be sent Plaintiff and the Class Members a COBRA notice in the form attached hereto as Exhibit B.

80.     The COBRA notice that the Plan Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth in above.

81.     As a result, Plaintiff brings a claim under § 502(c) against the Plan Defendant "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan; (B) to obtain other appropriate equitable relief, including to (i) redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

82.     The Plan Defendant violated 29 C.F.R. § 2590.606-4(b)(4)(i) by failing to identify the Plan Administrator, or provide its contact information in the COBRA notice, and by also failing to provide a notice written in a manner calculated to be understood by the average plan participant.

83.     These violations were material and willful.

84.     The Plan Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff, individually and on behalf of the Class, pray for relief as follows: Designating Plaintiff's counsel as counsel for the Class;

    a.      Issuing proper notice to the Class at Defendants' expense;

    b.      Declaring that the COBRA notice sent by Defendants to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

c.      Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendants from continuing to use its defective COBRA notice and requiring Defendants to send corrective notices;

d.      Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

e.      Awarding attorneys' fees, costs and expenses to Plaintiff's counsel;

f.      Granting such other and further relief, in law or equity, as this Court deems appropriate;

DATED this 19th day of November, 2020.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
**LUIS A. CABASSA, P.A.**
Florida Bar Number: 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct: 813-337-7992
Main: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: gnichols@wfclaw.com


**and**

**CHAD A. JUSTICE**
Florida Bar Number: 121559
**JUSTICE FOR JUSTICE LLC**
1205 N Franklin St., Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: chad@getjusticeforjustice.com

**Attorneys for Plaintiff**